**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOSHUA STONE,

Plaintiff,

v.

CITY OF CHICAGO; OFFICER Pankey
Star 8365, OFFICER Smith Star 18090,
Officer Prothro Star 8805

Defendant.

Case No. 23-CV-8056

JURY DEMAND

**FIRST AMENDED COMPLAINT**

NOW COMES the PLAINTIFF, JOSHUA STONE, by and through his attorney(s) Frank Avila of the Avila Law Group, LLC, and in complaining of DEFENDANT CITY OF CHICAGO, Officers Smith, Pankey, and Prothro in their Official Capacity, states as follows:

1. In this civil action, Plaintiff Joshua Stone arises to confront the pervasive injustices perpetrated by the City of Chicago and its police officers, who have willfully and egregiously violated his constitutional rights secured by the Fourth and Second Amendments of the United States Constitution, as well as the laws of the United States. On February 8, 2022, despite having disclosed his concealed firearm in accordance with the law, the Defendant police officers engaged in a calculated scheme to fabricate charges

against Mr. Stone, leading to his wrongful accusation under 430 ILCS 66.0/10H for failing to disclose a concealed firearm. This baseless charge is not merely an affront to justice; it is a glaring illustration of the systemic failures that allow law enforcement to manipulate the very fabric of the law to target and oppress citizens. Moreover, Mr. Stone faced further injustice when he was wrongfully charged under an unconstitutional city ordinance—Chicago Municipal Code 8-20-085(a)—for possessing a High-Capacity Magazine. The City of Chicago has persisted in enforcing this ordinance despite an overarching understanding that it contravenes the Constitution. The City involved, fully aware of the ordinance's unconstitutional nature, still proceeded to impose these unfounded charges against Mr. Stone, thus infringing upon his rights. The Civilian Office of Police Accountability, after a thorough investigation on August 14, 2023, found compelling evidence that the charges against Mr. Stone for failing to disclose his concealed firearm were indeed fabricated. Such revelations underscore the critical importance of accountability within our law enforcement agencies. Police officers and the city cannot be permitted to conjure false charges, shielded by the blanket of immunity, without facing the consequences of their actions. As a direct result of these unlawful actions, Mr. Stone endured the indignity of incarceration, the revocation of his FOID card, and the grievous loss of his constitutional rights. The pain and suffering inflicted upon him are not merely personal injuries; they represent an assault on the principles of justice and liberty that our legal system is fundamentally designed to protect. Therefore, Mr. Stone seeks redress for the harm suffered at the hands of the Defendants, calling for accountability and justice to prevail.

**Jurisdiction and Venue**

2

2. This is a civil action arising under 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of rights guaranteed to Plaintiff under the United States Constitution. This Court has jurisdiction of the action pursuant to 28 U.S.C. §1331. In addition, jurisdiction over Plaintiff's state law indemnification claim is conferred by principles of pendent jurisdiction pursuant to 28 U.S.C. §1367 because that claim arises from the same facts and circumstances as Plaintiff's federal claims.

3. Venue is proper under 28 U.S.C. § 1391(b), because the Defendants are located in this judicial district, and the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

4. Plaintiff, Joshua Stone, is a United States citizen and a resident of Cook County, Illinois.

5. Defendant's Police officers Smith, Pankey and Prothro were at all times material hereto, duly appointed Officers employed by Defendant city of Chicago acting in the capacity of sworn law enforcement officials under the color of law.

6. Defendant City of Chicago, Illinois ("Chicago") is an Illinois municipal corporation located in Cook County, Illinois.

## FACTS

7. On February 08, 2022, Mr. Stone was lawfully traveling westbound on 76th St when officers traveling eastbound on the same street caught his attention. He turned into a gas station to get snacks, but noticed it was crowded and left. Mr. Stone then proceeded eastbound on 76th St, at which point the officers activated their emergency lights.

8.  Without just cause the officers pulled Mr. Stone over he pulled into a restaurant and the first Officer Prothro approached the passenger side window, asked him to roll down all his windows, and stated that his partner would talk to him.

9.  Officer Smith approached the driver's side and stated that he pulled Mr. Stone over because he did not have a front license plate and no turn signal. Mr. Stone responded in a questioning manner about the turn signal, to which Smith replied, "Yeah, but you don't have a front plate. Can I see your license?" The officers were not being truthful.

10. Mr. Stone started looking for his license, and the magazine from his firearm became visible as it was in between his legs. At this point, Officer Smith asked if he had a FOID and concealed carry, to which he responded, "Yes." After he responded affirmatively, Smith said, "Ok, let me see that FOID and CCL."

11. Mr. Stone then continued looking for his wallet, at which point Officer Smith grabbed the firearm from between his legs. He continued to look for his wallet, and Smith asked him to get out of the car. He replied, "For what?" and Smith replied, "Officer safety." At this point, he got out of the vehicle, and Smith then said, "It's going to be smooth" as he exited.

12. Mr. Stone continued to look for his wallet, and a second officer told him to turn around. He said, "Are y'all trying to cuff me?" Officer Prothro stated, "Let me tell you something" and proceeded to speak about the community dynamic and the police, stating that he was doing too much moving.

13. Mr. Stone then said, "The officer asked for my wallet. How am I supposed to get it?" Officer Prothro replied, "We will figure that out later." At this point, he was cuffed, and Officer Prothro asked where his wallet was. He responded, "In my back pocket," and the officer grabbed his wallet and took it to their vehicle with the firearm.

4

14. Officer Prothro asked him if there was anything in the vehicle, and he responded by saying, "Y'all can't search my car. I do not consent to a search." At this point, one of the officers called for a supervisor and stated that Mr. Stone was doing too much. He then heard one of the officers state, "You can't have a CCL in two states." Mr. Stone replied that he could, and that the Florida permit was a non-resident permit.

15. Supervising Officer Goetz arrived on scene and asked Mr. Stone when he got the Florida permit. Mr. Stone then asked the officer that was holding him why he was holding him the way he was. The officer replied, "You have a gun, and it's for my safety." The supervisor backed him up and stated that if he didn't like it, he could go to the mayor's office and that this is how they were trained.

16. Throughout the ordeal the police officers wrongly claims that Plaintiff was being detained for reasons that did not violate the law. For example that Plaintiff could not have two conceal and carry license.

17. When the officers call in the FOID and discover that the FOID is in good standing then they decide to charge based on the city ordinance violation.

18. Defendant Smith then stated that Mr. Stone was being taken into custody for having a high-capacity magazine, which was a FCCA violation.

19. Mr. Stone explained that it was not a concealed-carry violation and that they could not charge him with that due to being a concealed carry holder and preemption covered under FCCA. Officer Prothro responded that it was a city charge; to which Mr. Stone replied "you can't charge me with that." Mr. Stone asked defendant Smith to pull up the FCCA; Smith replied he would but never did.

20. Mr. Stone was taken he was taken into custody due to having a high-capacity magazine, which defendants believed was a concealed carry violation.

21. Mr. Stone was charged with 430 ILCS 66.0/10H failing to disclose a concealed firearm and Municipal Ordinance 8-20-085(a) High-Capacity Magazine.

22. On Body Worn Camera Supervising Officer Goetz can be heard asking Officer's Smith and Pankey if Mr. Stone disclosed to them that he was armed. Officer Pankey responded by saying "when he (Officer Smith) asked him, he (Mr. Stone) said yea."

23. Defendants Smith and Prothro attested under oath that these charges were valid in their arrest report and on the charging documents knowing that they were indeed false.

24. As a result, Plaintiffs FOID and CCL were revoked on 2/9/23 and his vehicle was towed.

25. The charges were dropped as they were fictitious, notwithstanding this Mr. Stone had to spend the night in jail and suffered emotional humiliation based on the violation of his constitutional rights.

26. The lawful firearm of Plaintiff Joshua Stone was unlawfully and illegally seized. The Firearm was NEVER returned even though the case was dismissed.

27. Joshua Stone had his Illinois Firearm Identification Card (Conceal), and his Conceal and Carry license (CCL)—both his FOID and his Conceal and Carry were proper, active, unexpired, and valid. He told the police officer that he had a valid FOID and Conceal and Carry and showed the licenses to the Police Officer. This is a violation of his 2nd Amendment Rights and a violation of his FOID and Conceal and Carry. The Plaintiff, Joshua Stone, is a citizen of the United States and is entitled to the protections of the United States Constitution and specifically the 4th Amendment of the United States Constitution in violation which the Chicago Police Officer violated because it was an illegal search and

seizure, and the 2nd Amendment of the United States Constitution which the Chicago Police Department violated by arresting the Plaintiff and illegally seizing his lawful firearm. There was also a violation of State Law and precedent in case law by violating the Plaintiffs rights as he was a valid Illinois FOID card holder and valid Illinois CCL holder. The Conceal and Carry has pre-emption which supersedes Cook County statues and City of Chicago statutes—even if, *arguendo*, the client violated a County or City statute (Which this case is NOT admitting there was a violation of County Statute nor City Statute in this case). The case was dismissed, and the firearm was not returned. The Plaintiff's Property was illegally taken in violation of his Constitutional Rights under the 2nd Amendment, the 4th Amendment and State Law. The Plaintiff was wrongfully and illegally arrested in violation of his Civil Rights.

28. This case was a clear abuse of process and malicious prosecution. The Chicago Police Department committed clear fraud.

29. Plaintiff later filed a complaint with the Civilian Office of Police Accountability (COPA).

30. In its investigation COPA found for Plaintiff particularly on Plaintiffs allegation that the officers lied about plaintiff failing to disclose a concealed firearm and charging him with 430 ILCS 66.0/10H failing to disclose a concealed firearm. **SEE EXHIBIT A.**

### FIRST CAUSE OF ACTION (FALSE ARREST BY DEFENDANTS PANKEY AND SMITH IN THEIR OFFICIAL CAPACITY, PURSUANT TO 42 U.S.C. §1983)

31. The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as though fully set forth.

32. The Defendants' arrested plaintiff without probable cause.

33. Defendants made one or more false statements.

7

34. The defendants withheld material facts that proved the plaintiffs' innocence.

35. As a direct and proximate result of the Individual Defendants' wrongful acts, Plaintiff was deprived of his liberty and property and subjected to severe emotional distress.

36. Particularly Defendants at all times knew that Plaintiff disclosed his concealed firearm and notwithstanding this charged him with 430 ILCS 66.0/10H failing to disclose a concealed firearm.

37. Defendants used their power as police officers as explained in the COPA investigation to charge plaintiff with a false charge.

38. The Defendants' actions, as alleged herein, were objectively unreasonable and were undertaken with intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiff's constitutionally protected rights, thereby entitling Plaintiff to an award of punitive damages.

39. Plaintiff is further entitled to recovery of his attorney's fees pursuant to 42 U.S.C. §1988.

### SECOND CAUSE OF ACTION (UNLAWFUL PRETRIAL DETENTION, PURSUANT TO 42 U.S.C. §1983)

40. The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as though fully set forth.

41. Detention without probable cause violates the Fourth Amendment (as applied to the states by the Fourth Amendment).

42. As outlined above, Defendant police officers detained plaintiff without probable cause for one night in violation of plaintiff's fourth amendment rights.

43. Defendants used made up charges in part to detain Plaintiff.

44. Both Defendants police officers and police supervisors failed to act.

45. Absent the made up charges plaintiff would have only been charged with a city ordinance violation.

46. The misconduct of Defendants as outlined above proximately caused injury to plaintiff, including, but not limited to, emotional pain and suffering.

**THIRD CAUSE OF ACTION (UNREASONABLE SEARCH BY THE DEFENDANTS, PURSUANT TO 42 U.S.C. §1983)**

1. The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as though fully set forth.

2. The Individual Defendants' execution of the search was conducted in an unreasonable manner, constituting an unreasonable search under the Fourth Amendment of the U.S. Constitution.

3. As a direct and proximate result of the Individual Defendants' wrongful acts, Plaintiff was deprived of his liberty and property and subjected to severe emotional distress.

4. The Individual Defendants' actions, as alleged herein, were objectively unreasonable and were undertaken with intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiff's constitutionally protected rights, thereby entitling Plaintiff to an award of punitive damages.

5. Plaintiff is further entitled to recovery of his attorney's fees pursuant to 42 U.S.C. §1988.

**FOURTH CAUSE OF ACTION (UNLAWFUL SEIZURE, PURSUANT TO 42 U.S.C. §1983)**

6. The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as though fully set forth.

9

7. The Defendants' seizure of property was conducted in an unlawful manner, constituting an unreasonable seizure under the Fourth Amendment of the U.S. Constitution.

8. As a direct and proximate result of the Individual Defendants' wrongful acts, Plaintiff was deprived of his liberty and property and subjected to severe emotional distress.

9. The Defendants' actions, as alleged herein, were objectively unreasonable and were undertaken with intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiff's constitutionally protected rights, thereby entitling Plaintiff to an award of punitive damages.

10. The charges caused Plaintiffs FOID to be taken away, this was a direct cause of the fake charges.

11. Plaintiff is further entitled to recovery of his attorney's fees pursuant to 42 U.S.C. §1988.

**FIFTH CAUSE OF ACTION (SECOND AMENDMENT VIOLATION PURSUANT TO 42 U.S.C. §1983)**

12. The allegations contained in the foregoing paragraphs are repeated, realleged, and incorporated herein by reference as though fully set forth.

13. The Defendants' false allegations and charges caused plaintiffs FOID and Concealed Carry license to be revoked.

14. As a direct and proximate result of the Defendants' wrongful acts, Plaintiff was deprived of his liberty and property and subjected to severe emotional distress.

15. The Defendants' actions, as alleged herein, were objectively unreasonable and were undertaken with intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiff's constitutionally protected rights, thereby entitling Plaintiff to an award of punitive damages.

10

16. Plaintiff is further entitled to recovery of his attorney's fees pursuant to 42 U.S.C. §1988.

## SIXTH CAUSE OF ACTION (STATE LAW CLAIM AGAINST CHICAGO FOR INDEMNIFICATION

17. The allegations contained in the foregoing paragraphs are repeated, re-alleged, and incorporated herein by reference as though fully set forth.

18. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

19. At all times relevant herein the Individual Defendants were employed as police officers by Chicago and were acting under color of law and in the course and scope of their employment by Chicago.

20. Using this power Defendants acted against Plaintiff by making up charges.

21. Even the Police supervisor who Plaintiff thought would serve and protect him allowed for this injustice to occur.

## SEVENTH CAUSE OF ACTION (MONELL CLAIM AGAINST CHICAGO)

22. The allegations contained in the foregoing paragraphs are repeated, re-alleged, and incorporated herein by reference as though fully set forth.

23. For a Monell Claim to succeed, a plaintiff must show four elements: (1) deprivation of a federal right. (2) an action pursuant to a municipal policy; (3) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations; and (4) causation, meaning the municipal action was the "moving

11

force" behind the constitutional injury. Dean v Wexford Health Service Inc., 18 F.4th 214, 235 (7th Cir. 2021)

24. Under Monell, a governmental entity's "own violations" consist of a policy or custom made by lawmakers or by those "whose edicts and acts may fairly aid to represent official policy." Monell, 436 U.S. at 694.

25. "A governmental entity may be liable for an express policy that causes a constitutional deprivation when enforced." McTigue v City of Chicago, 60 F.3d 381, 382 (7th Cir. 2009).

26. The City of Chicago High-Capacity Magazine Ordinance is preempted by state law as it relates to handgun possession and concealed carry.

27. Chicago ignores that fact and has enforced that ordinance on FOID card holders and Concealed Carry holders.

28. The City of Chicago knowing the law, having participated in Amicus briefs in the legal cases setting forth the law continued to enforce the unconstitutional statute.

29. The city has failed to train its officers in the law as it relates to conceal and carry as evidenced by the officers' claims that Plaintiff could not have had a Florida and Illinois license.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, Joshua Stone, respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff and against each of the Defendants for actual and punitive damages in amounts to be proven each at trial, plus post-judgment interest until fully paid;
B. Enter judgment in favor of Plaintiff and against Defendant City of Chicago, Illinois for actual and punitive damages in an amount to be proven at trial, plus post-judgment interest until fully paid;
C. Award Plaintiff a reasonable attorney's fee pursuant to 42 U.S.C. §1988;
D. Tax the costs of this action against Defendants;

E. Grant Plaintiff a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable;

F. Grant Plaintiff such other and further relief as this Court deems just and proper.

DATED: August 26, 2024          Respectfully Submitted,


               By        /s/ Frank Avila

Frank Avila
7132 N. Harlem
Suite 107
Chicago, Illinois 60631
FrankAvilaLaw@GMail.com
773-671-3480